**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| SHELLY DOUGLAS and JOHN DOUGLAS, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>TAYLOR FRESH FOODS, INC., a Delaware corporation; and TAYLOR FARMS CALIFORNIA, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 2:26-cv-2567<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

NOW COME Plaintiffs SHELLY DOUGLAS and JOHN DOUGLAS, by and through their attorneys of record, and for their causes of action against Defendants Taylor Fresh Foods, Inc. and Taylor Farms California, Inc., complain, allege, and state as follows:

## I. INTRODUCTION

1. This is a civil action for personal injuries sustained by Plaintiffs Shelly Douglas and John Douglas, husband and wife, as a result of their consumption of fresh shredded iceberg lettuce contaminated with *Cyclospora cayetanensis*, a pathogenic parasite. The Taylor Defendants grew, processed, packaged, supplied, and distributed that lettuce to Taco Bell restaurants, including the restaurant at which Mr. and Mrs. Douglas purchased and ate a meal on July 1, 2026.

2. Mr. and Mrs. Douglas both fell ill, both submitted stool specimens, and both were confirmed by laboratory testing to be infected with *Cyclospora cayetanensis*. Mr. Douglas was hospitalized twice over. Their illnesses are part of a multistate outbreak that federal and state public health authorities have traced to a single supplier of iceberg lettuce and that, as of the most



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

recent federal update, has sickened 11,458 people in twenty states, hospitalized at least 495, and killed two.

## II. PARTIES

3. Plaintiff Shelly Douglas (hereinafter “Plaintiff Shelly Douglas” or Mrs. Douglas) is now, and was at all times material to this Complaint, an adult resident and citizen of Wellsville, Franklin County, Kansas.

4. Plaintiff John Douglas (hereinafter “Plaintiff John Douglas” or Mr. Douglas) is now, and was at all times material to this Complaint, an adult resident and citizen of Wellsville, Franklin County, Kansas. At all times material to this Complaint, Mr. Douglas was, and he remains, the lawful spouse of Plaintiff Shelly Douglas, and he resided and continues to reside with her in the same household.

5. Defendant Taylor Fresh Foods, Inc. (hereinafter “Taylor Fresh”) is, and was at all times material to this Complaint, a corporation organized and existing under the laws of the State of Delaware, with its headquarters in Salinas, California. At all times material to this Complaint, Taylor Fresh, acting either alone or jointly with Defendant Taylor Farms California, Inc., grew, processed, manufactured, packaged, supplied, and distributed the fresh lettuce products, including the shredded iceberg lettuce supplied to Taco Bell restaurants, that caused Plaintiffs’ injuries and damages.

6. Defendant Taylor Farms California, Inc. (hereinafter “Taylor Farms”) is, and was at all times material to this Complaint, a corporation organized and existing under the laws of the State of Delaware, with its headquarters in Salinas, California. At all times material to this Complaint, Taylor Farms, acting either alone or jointly with Defendant Taylor Fresh, grew, processed, manufactured, packaged, supplied, and distributed the fresh lettuce products, including



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

the lettuce supplied to Taco Bell restaurants, that caused Plaintiffs' injuries and damages. Defendants Taylor Fresh and Taylor Farms are referred to collectively herein as the "Taylor Defendants."

7. At all times material to this Complaint, the Taco Bell restaurant located at 18731 S. Gardner Road, Gardner, Kansas (the "Subject Restaurant") purchased, received, prepared, and sold to the consuming public, including Mr. and Mrs. Douglas, food products containing the fresh lettuce products that the Taylor Defendants grew, processed, packaged, supplied, and distributed.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiffs are citizens of the State of Kansas. Defendants Taylor Fresh Foods, Inc. and Taylor Farms California, Inc. are citizens of the State of Delaware, where they are incorporated, and of the State of California, where they maintain their principal places of business. No Defendant is a citizen of the State of Kansas.

9. Venue is proper in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including the distribution, preparation, and sale of the contaminated food product that Mr. and Mrs. Douglas purchased and consumed, and Plaintiffs' resulting injuries. Plaintiffs reside in this District, and the Subject Restaurant is located in this District.

## IV. FACTS

### A. The 2026 Multistate Cyclosporiasis Outbreak



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

10. On July 14, 2026, the Centers for Disease Control and Prevention ("CDC") issued a Health Alert Network Health Advisory (CDCHAN-00531) notifying clinicians, public health practitioners, and laboratorians of domestically acquired cyclosporiasis cases in multiple U.S. states. According to the CDC, since May 1, 2026, it had received reports of 1,645 confirmed domestic cases of cyclosporiasis and was aware of more than 5,100 additional cases requiring further analysis to confirm as domestically acquired—nearly 7,000 people nationwide. This total is substantially higher than the 249 cases reported nationally during the same period in 2025.

11. According to the CDC, the 1,645 lab-confirmed cases were reported by 34 states. The affected case-patients ranged in age from 2 to 95 years, with a median age of 44 years. Of the case-patients with available information, 141 (9%) were hospitalized. The CDC has recognized that, because cyclosporiasis is often underdiagnosed and underreported, the true number of illnesses is likely higher than the number reported.

12. Also on July 14, 2026, the CDC posted an outbreak investigation notice reporting that, as of July 13, 2026, more than 400 people infected with *Cyclospora* had been reported to the CDC in connection with a single multistate outbreak that appears to be epidemiologically linked, suggesting a common source of infection. Sick people in that outbreak reported the onset of symptoms on or after June 22, 2026.

13. The CDC, the U.S. Food and Drug Administration ("FDA"), and state and local health departments have been working together to investigate the multistate outbreak and to identify the source of illness. Previous cyclosporiasis outbreaks have repeatedly been linked to the consumption of contaminated fresh produce, including leafy greens and fresh herbs. Public health officials identified lettuce or salad greens as a likely source of the multistate outbreak.



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

14. In early July 2026, Taco Bell restaurants posted signs at their counters informing customers that the chain could no longer serve lettuce, cilantro, onion, pico de gallo, or guacamole. Thereafter, as reported in the national press, federal and state health officials confirmed that they were investigating whether food products served at Taco Bell restaurants played a role in the multistate cyclosporiasis outbreak. The ingredients withdrawn by Taco Bell—lettuce, cilantro, onions, and the fresh produce used in its pico de gallo and guacamole—are among the fresh produce items historically implicated in *Cyclospora* outbreaks.

15. On July 16, 2026, the FDA issued an outbreak advisory reporting that the FDA and CDC, in collaboration with state and local partners, were investigating a multistate outbreak of *Cyclospora* illnesses linked to shredded iceberg lettuce served at Taco Bell locations. As of that date, 1,644 people infected with *Cyclospora* and reporting exposure to Taco Bell had been reported, with 94 hospitalizations. The FDA further reported that ingredient-level analyses of the meals eaten by case-patients who reported eating at Taco Bell indicated that 90% of those interviewed reported eating iceberg lettuce, and that the FDA's traceback investigation had identified convergence on a single supplier of iceberg lettuce from Mexico used by the Taco Bell locations where sick people ate before becoming ill.

16. On July 17, 2026, the FDA reported that its traceback investigation had identified that single supplier as Taylor Farms de Mexico, which provided the shredded iceberg lettuce used by the Taco Bell locations where sick people ate before becoming ill. That same day, Taylor Farms de Mexico announced that it was voluntarily removing all iceberg lettuce sourced from central Mexico from the U.S. market, and Taylor Fresh initiated a recall of the implicated iceberg lettuce products, including products distributed to foodservice customers.



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

17. On July 24, 2026, the FDA reported that the outbreak had expanded to include illnesses from nine states—Illinois, Indiana, Kansas, Kentucky, Michigan, Ohio, Oklahoma, Pennsylvania, and West Virginia. Based on epidemiological information collected by the CDC, a total of 1,947 people infected with *Cyclospora* and reporting exposure to Taco Bell had been reported by those nine states, with illness onsets ranging from June 22, 2026 through July 20, 2026, and at least 98 hospitalizations. The FDA also reported that Taylor Fresh distributed the recalled iceberg lettuce products from June 29, 2026, through July 16, 2026 in twenty-eight states.

18. On August 5, 2026, the CDC reported that, as state and local health officials continued to interview additional case-patients, the outbreak had grown to include people who reported exposure either to Taco Bell or to the recalled Taylor Farms de Mexico iceberg lettuce. As of that date, a total of 6,358 outbreak-associated illnesses had been reported from fifteen states—the nine states previously identified plus Arkansas, Iowa, Missouri, Nebraska, New Hampshire, and North Carolina—with illness onsets from June 22, 2026 through July 31, 2026, at least 278 hospitalizations, and two deaths reported in Michigan.

19. On August 13, 2026, the CDC and FDA reported that the total case count associated with the multistate outbreak had risen to 9,481 illnesses reported from seventeen states, with the addition of Maine and Massachusetts, with at least 398 hospitalizations and two deaths reported. The outbreak includes people who reported exposure to processed iceberg lettuce from Taylor Farms de Mexico served or purchased at various locations, including people who previously reported eating at Taco Bell. The FDA further reported that it had initiated an onsite inspection and sampling at Taylor Farms de Mexico in coordination with Mexican officials, and that distribution of the recalled iceberg lettuce to foodservice customers had been confirmed in at least thirty-one states.



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

20. As of the most recent update to the FDA and CDC outbreak pages on August 27, 2026, a total of 11,458 outbreak-associated illnesses had been reported from twenty states with illness onsets from June 22, 2026 through August 15, 2026, at least 495 hospitalizations, and two deaths. The investigation remains open.

21. The CDC and FDA have advised that the number of confirmed cases is expected to continue to rise notwithstanding the recall, because it can take as long as six weeks for the CDC and state officials to determine whether a sick person is part of this outbreak. The agencies have further advised that the true number of sick people in the outbreak is likely higher than the number reported, because some people recover without medical care and are never tested for *Cyclospora*, and that the outbreak may not be limited to the states with known illnesses.

**B. The Taylor Defendants Supplied the Contaminated Iceberg Lettuce Used by Taco Bell**

22. As part of the ongoing investigation into the 2026 multistate cyclosporiasis outbreak, public health investigators identified fresh shredded iceberg lettuce served at Taco Bell restaurants as a source of the outbreak and identified the Taylor Defendants as the growers, processors, packers, and suppliers of that lettuce. The Taylor Defendants grew, processed, packaged, and distributed the shredded iceberg lettuce that was supplied to Taco Bell restaurants and that is linked to the outbreak.

23. The iceberg lettuce supplied by the Taylor Defendants was distributed to Taco Bell restaurants in Kansas and in other states, including the Subject Restaurant, at which Mr. and Mrs. Douglas purchased and consumed the lettuce. Kansas is among the twenty states in which the CDC and FDA have identified outbreak-associated illnesses and is among the states to which the Taylor Defendants distributed the recalled iceberg lettuce products.



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

24. At all times material to this Complaint, the Taylor Defendants were in the business of growing, processing, packaging, supplying, distributing, and selling fresh lettuce and other fresh produce, and of placing those products into the stream of commerce for use by the consuming public. The Taylor Defendants placed the contaminated iceberg lettuce into the stream of commerce with the expectation that it would be prepared and served to restaurant customers such as Mr. and Mrs. Douglas, and it was.

**C. Cyclosporiasis and Cyclospora Infection**

25. Cyclosporiasis is a gastrointestinal illness caused by the microscopic parasite *Cyclospora cayetanensis*. People become infected by consuming food or water contaminated with the parasite. The illness is not usually spread directly from person to person. Case counts typically rise during the spring and summer months, and the CDC considers May 1 through August 31 to be the annual cyclosporiasis season. Previous outbreaks have been linked to consuming contaminated fresh produce.

26. Symptoms of cyclosporiasis include frequent, watery diarrhea, along with loss of appetite, weight loss, bloating, stomach cramps and pain, increased gas, nausea, and fatigue. Less common symptoms include low-grade fever, body aches, headache, and vomiting. Symptoms typically begin about one week after exposure, and the CDC reports an incubation period ranging from two days to two weeks or more. Without treatment, symptoms can follow a remitting-relapsing course that can last from a few days to a month or longer.

27. Laboratory detection of *Cyclospora* in stool can be challenging even in symptomatic patients, and standard ova-and-parasite examinations may not detect it reliably; specific diagnostic testing for *Cyclospora* must be requested. The recommended treatment for confirmed cyclosporiasis is a 7-to-10-day course of trimethoprim-sulfamethoxazole, sold under



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

the brand name Bactrim. Illness can be severe, and complications can include dehydration, malabsorption, cholecystitis, and reactive arthritis.

28. Cyclosporiasis is entirely preventable through proper food-safety practices. Because *Cyclospora* contamination originates in the field and water before produce reaches the point of sale, because chemical disinfection or ordinary washing may not fully eliminate the parasite, and because the CDC advises that cooking produce to at least 158 degrees Fahrenheit is required to kill the parasite, the burden of preventing cyclosporiasis rests on those who grow, handle, distribute, and sell fresh produce and the foods made from it.

**D. Plaintiffs' Illnesses and Injuries**

29. On Wednesday, July 1, 2026, Mr. and Mrs. Douglas purchased and ate a meal from the Subject Restaurant.

30. The meals that Mr. and Mrs. Douglas purchased from the Subject Restaurant contained fresh shredded iceberg lettuce, which they each consumed.

31. On Friday, July 10, 2026, both Mr. and Mrs. Douglas began experiencing symptoms of a *Cyclospora* infection, including the sudden and urgent need to use the bathroom, followed by frequent, watery diarrhea.

32. Plaintiffs' symptoms escalated rapidly. By Saturday, July 11, 2026, Mr. Douglas' diarrhea had become so frequent that he was required to use the bathroom as many as twenty-five times in a single day.

33. On Monday, July 13, 2026, both Mr. and Mrs. Douglas sought medical care from a provider for their continuing symptoms.

34. On Monday, July 27, 2026, Mr. and Mrs. Douglas each submitted a stool specimen for *Cyclospora* testing. That same evening, both Mr. and Mrs. Douglas were notified that their


MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

specimens had returned positive, confirming that each of them was infected with *Cyclospora cayetanensis*.

35. On Tuesday, July 28, 2026, Mr. Douglas's condition deteriorated to the point that he required emergency care. He spent approximately nine hours in the emergency department before being admitted, and he remained hospitalized for approximately two and one-half days, during which he was treated with intravenous fluids for dehydration and malnutrition.

36. Mrs. Douglas was treated with antibiotics for her own *Cyclospora* infection. She was too ill during her husband's hospitalization to visit him in the hospital.

37. Mr. and Mrs. Douglas each missed work as a direct and proximate result of their *Cyclospora* infections, and each was required to expend paid time off and/or lost income as a result.

38. Mr. and Mrs. Douglas's forty-fifth wedding anniversary fell during the period of their illnesses. As a direct and proximate result of their *Cyclospora* infections, they were unable to observe or celebrate it.

39. Mr. Douglas continues to experience recurrent bouts of his illness. On September 4, 2026, Mr. Douglas readmitted to the hospital after experiencing weakness, lethargy, and atrial fibrillation. During his hospitalization, he continued to test positive for *Cyclospora* and was released on September 6, 2026.

40. Ultimately, as a direct and proximate result of their *Cyclospora* infections, Mr. and Mrs. Douglas each suffered physical illness, pain and suffering, emotional distress, medical and medical-related expenses, pharmaceutical expenses, lost wages and lost income, diminished earning capacity, a diminished quality of life, and other injuries.

## V. CAUSES OF ACTION



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

## STRICT PRODUCT LIABILITY

41. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

42. The food product at issue in this action—the fresh shredded iceberg lettuce that Mr. and Mrs. Douglas consumed—was grown, harvested, processed, manufactured, packaged, marketed, distributed, and/or sold by and through the Taylor Defendants.

43. The Taylor Defendants were at all material times regularly engaged in the business of growing, processing, packaging, supplying, distributing, and selling lettuce and other fresh produce, and of placing those products into the stream of commerce for use by the consuming public, including Mr. and Mrs. Douglas. Such conduct was solely for commercial purposes.

44. At the time the food product at issue left the Taylor Defendants' control, it was defective and unreasonably dangerous for its ordinary and expected use because it was contaminated with *Cyclospora cayetanensis*, a pathogenic parasite, and because it was not adequately grown, processed, packaged, distributed, or marketed to minimize the risk of illness and injury.

45. The food product at issue reached Mr. and Mrs. Douglas without substantial change in the condition in which it left the Taylor Defendants' control, and it remained defective and unreasonably dangerous at all times thereafter until it caused Plaintiffs' illnesses and damages.

46. At the time the food product at issue was placed into the stream of commerce, it was reasonably expected and foreseeable to the Taylor Defendants that the product would be used by persons such as Mr. and Mrs. Douglas in the manner in which food is ordinarily used, that is, for human consumption. Mr. and Mrs. Douglas used the product in precisely that manner.



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

47. The defective and unreasonably dangerous condition of the food product at issue was the direct and proximate cause of Plaintiffs' *Cyclospora* infections and of Plaintiffs' resulting injuries and damages, and the Taylor Defendants are therefore strictly liable to Plaintiffs.

48. As a direct and proximate result of one or more of the foregoing acts of the Taylor Defendants, Plaintiffs sustained serious injuries and have suffered general, special, incidental, and consequential damages in an amount in excess of $75,000.00. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

**BREACH OF EXPRESS WARRANTY**

49. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

50. The Taylor Defendants owed Mr. and Mrs. Douglas a duty to grow, process, manufacture, package, distribute, and sell a food product that conformed to their express warranties as proffered on their labels and/or promises to the public.

51. The Taylor Defendants expressly warranted, through the sale and distribution of their food products into the stream of commerce and through the statements and conduct of their employees and agents, that the fresh lettuce products they supplied were of merchantable quality, were fit for human consumption, and were not adulterated or otherwise injurious to health. Those



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

affirmations of fact and promises became part of the basis of the bargain, within the meaning of K.S.A. 84-2-313.

52. The food product at issue was contaminated with *Cyclospora cayetanensis*. Such a contaminated food product would not pass without objection in the trade and was not fit for the ordinary purposes for which such goods are used and for which the Taylor Defendants expressly affirmed and/or promised the product could be used: consumption.

53. The Taylor Defendants' warranties extend to Mr. and Mrs. Douglas, who were injured in person by the breach of those warranties and who relied upon such when purchasing the food product that they consumed and assumed and believed was safe to consume. Under Kansas law, privity of contract is not required for a consumer injured in person by a breach of warranty to recover against the manufacturer or supplier of the defective product.

54. As a direct and proximate result of the Taylor Defendants' breach of express warranty, Mr. and Mrs. Douglas each suffered a *Cyclospora* infection and the injuries and damages described herein, in an amount in excess of $75,000.00, including but not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

**BREACH OF IMPLIED WARRANTY**



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

55. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

56. The Taylor Defendants owed Mr. and Mrs. Douglas a duty to grow, process, manufacture, package, distribute, and sell a food product that conformed to their implied warranties, including the implied warranty of merchantability arising under K.S.A. 84-2-314 and the implied warranty of fitness for a particular purpose arising under K.S.A. 84-2-315.

57. The Taylor Defendants impliedly warranted, through the sale and distribution of their food products into the stream of commerce and through the conduct of their employees and agents, that the fresh lettuce products they supplied were of merchantable quality, were fit for human consumption, and were not adulterated or otherwise injurious to health.

58. The food product at issue was contaminated with *Cyclospora cayetanensis*. Such a contaminated food product would not pass without objection in the trade and was not fit for the ordinary purposes for which such goods are used. The sale and distribution of that product was therefore in breach of the implied warranty of merchantability.

59. Because of its contaminated condition, the food product at issue was not fit for the use and purpose intended by either Plaintiffs or the Taylor Defendants, that is, human consumption. The sale and distribution of that product was therefore in breach of the implied warranty of fitness for its intended purpose.

60. The Taylor Defendants' implied warranties extend to Mr. and Mrs. Douglas, who were injured in person by the breach of those warranties.

61. As a direct and proximate result of the Taylor Defendants' breaches of implied warranties, Mr. and Mrs. Douglas each suffered a *Cyclospora* infection and the injuries and damages described herein, in an amount in excess of $75,000.00, including but not limited to:



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

## VIII. FOURTH CAUSE OF ACTION

## NEGLIGENCE

62. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

63. The Taylor Defendants owed a duty to the ultimate consumers of their food products, including Mr. and Mrs. Douglas, to use reasonable care in the growing, harvesting, processing, packaging, distribution, and sale of those products, and to prevent or eliminate the risk that those products would be contaminated with *Cyclospora cayetanensis* or any other pathogen. This duty was heightened by the known and publicized history of *Cyclospora* outbreaks traced to imported fresh produce and leafy greens, and by the fact that the product was intended to be served to restaurant customers without further cooking or processing that would eliminate the parasite.

64. The Taylor Defendants owed a duty to source, use, and supply raw materials, agricultural inputs, and agricultural and processing practices that complied with applicable federal, state, and local laws, ordinances, and regulations and with industry standards, and to



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

source and supply produce that was clean, wholesome, free from adulteration, and safe for human consumption.

65. Because the Taylor Defendants sourced the implicated iceberg lettuce from outside the United States and imported it for sale in this country, they were also subject to the Foreign Supplier Verification Programs requirements of 21 C.F.R. Part 1, Subpart L, which obligated them, as importers, to evaluate the known and reasonably foreseeable hazards associated with the product—including *Cyclospora* contamination of fresh leafy greens grown in regions with a documented history of such contamination—and to verify that their foreign supplier or suppliers adequately controlled those hazards. The Taylor Defendants failed to conduct an adequate hazard analysis and foreign-supplier verification as to the *Cyclospora* hazard and breached these duties.

66. The Taylor Defendants breached the duties they owed to Mr. and Mrs. Douglas by committing the following acts and omissions of negligence, among others:

a. Failing to adequately maintain or monitor the sanitary condition of their growing and harvesting operations, processing facilities, equipment, products, and employees;

b. Failing to implement and enforce adequate agricultural water, sanitation, worker hygiene, and harvesting practices sufficient to prevent *Cyclospora* contamination of fresh produce;

c. Failing to apply food safety policies and procedures that met industry standards for the safe and sanitary production, processing, and packaging of fresh produce;

d. Failing to adequately verify that their own suppliers and growers, including growers in Mexico, were employing food safety practices sufficient to prevent *Cyclospora* contamination of the produce they supplied;



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

e. Failing to adequately test, inspect, or otherwise verify the safety of the iceberg lettuce they distributed to foodservice customers;

f. Failing to take reasonable measures, given the known history of prior outbreaks of *Cyclospora* and other pathogens on fresh produce and leafy greens, to ensure that the lettuce they supplied was not grown, processed, or handled under conditions known, or that reasonably should have been known, to the food industry to be unsafe;

g. Failing to warn food service customers and ultimate consumers, including Mr. and Mrs. Douglas, that their product might contain *Cyclospora cayetanensis* and should not be consumed;

h. Failing to timely withdraw, recall, or otherwise remove the contaminated iceberg lettuce from the stream of commerce; and

i. Failing to properly train, supervise, and monitor their employees and agents, and the employees and agents of their growers and subcontractors, in the prevention of *Cyclospora* contamination.

67. As a direct and proximate result of the Taylor Defendants' negligence, Mr. and Mrs. Douglas suffered a *Cyclospora* infection and the injuries and damages described herein, in an amount in excess of $75,000.00, including but not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

**NEGLIGENCE PER SE**

68. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as though fully set forth herein.

69. The Taylor Defendants owed a duty to comply with all statutory and regulatory provisions pertaining to the manufacture, processing, distribution, storage, labeling, and sale of their food products, including the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and its adulteration prohibition at 21 U.S.C. § 342(a)(1); the Produce Safety Rule, 21 C.F.R. Part 112; the Foreign Supplier Verification Programs regulations at 21 C.F.R. Part 1, Subpart L; and the Kansas Food, Drug and Cosmetic Act, K.S.A. 65-655 *et seq.* Under K.S.A. 65-657, the processing, storage, or distribution of any food that is adulterated, and the adulteration of any food, are unlawful acts in the State of Kansas.

70. Under K.S.A. 65-664, a food is deemed adulterated if, among other things, it bears or contains any poisonous or deleterious substance which may render it injurious to health; if it consists in whole or in part of a diseased, contaminated, filthy, putrid, or decomposed substance, or is otherwise unfit for food; or if it has been produced, prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered diseased, unwholesome, or injurious to health. The food product that the Taylor Defendants grew, processed, packaged, distributed, and sold, and that Mr. and Mrs. Douglas purchased and consumed, was adulterated within the meaning of these provisions because it bore and contained *Cyclospora cayetanensis*, a pathogenic parasite that rendered it injurious to health,



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

because it was contaminated and otherwise unfit for food, and because it was produced, prepared, packed, or held under insanitary conditions.

71. Mr. and Mrs. Douglas are among the class of persons the above-referenced statutory and regulatory provisions were designed to protect, and the harm they suffered—foodborne illness caused by adulterated food—is precisely the harm those provisions were intended to prevent.

72. As a direct and proximate result of the Taylor Defendants' violation of statutes and regulations designed to protect consumers from contaminated food, Mr. and Mrs. Douglas each suffered a *Cyclospora* infection and the injuries and damages described herein, in an amount in excess of $75,000.00, including but not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

## X. DAMAGES

73. As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs Shelly Douglas and John Douglas have each suffered general, special, incidental, and consequential damages in an amount in excess of $75,000.00. These damages include, but are not limited to: damages for physical pain and suffering, past and future; damages for emotional distress and mental anguish, past and future; damages for loss of enjoyment of life and ability to



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

perform activities of daily life, and diminished quality of life, past and future; past and future medical and medical-related expenses; pharmaceutical expenses, past and future; travel and travel-related expenses, past and future; lost wages, lost income, and diminished earning capacity/opportunity, past and future; and all other ordinary, incidental, or consequential damages that would or could reasonably be anticipated to arise under the circumstances.

74. Pursuant to K.S.A. 23-2605, any recovery for the loss or impairment of a married person's ability to perform services in the household and in the discharge of his or her domestic duties is included within, and vests solely in, that person's own right of action, and Plaintiffs each seek such recovery within their respective claims.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs SHELLY DOUGLAS and JOHN DOUGLAS, by and through their attorneys of record, and for their causes of action articulated herein against Defendants TAYLOR FRESH FOODS, INC. and TAYLOR FARMS CALIFORNIA, INC., jointly and collectively pray for judgment against Defendants, jointly and severally, as follows:

A. For compensation for all general, special, incidental, and consequential damages suffered by Plaintiffs as a result of Defendants' conduct, in an amount to be proven at trial in excess of $75,000.00;

B. For prejudgment and post-judgment interest as allowed by law;

C. For Plaintiffs' costs and disbursements incurred herein, and for reasonable attorneys' fees to the fullest extent allowed by law and where proper as articulated;

D. For leave to amend or modify this Complaint as necessary or appropriate after additional or further discovery is completed in this matter and after all appropriate parties have been served; and



MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840

E. For such other and further relief as this Court deems just and equitable.

## XII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: September 22, 2026.

Respectfully submitted,

**ROUSE FRETS WHITE, P.C.**

/s/ *Rachel N. Boden*
Rachel N. Boden KS #26238
Randall L. Rhodes KS #15811
ROUSE FRETS WHITE, P.C.
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
(913) 387-1600
(913) 928-6739 – facsimile
rboden@rousepc.com
rrhodes@rousepc.com

**MARLER CLARK, INC., PS**

By: /s/ William D. Marler
William D. Marler
(*pro hac vice* forthcoming)
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
Telephone: (206) 346-1890
Email: bmarler@marlerclark.com

***Counsel for Plaintiffs***